**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NB ELEMENT, DST, | Case No. 26-10502 (CTG) |
| Debtor. | **Related Docket No. 7** |

**MEMORANDUM OPINION**

NB Element, DST, a Delaware statutory trust, is a single-asset real estate entity.[1]  Its sole asset is a student housing real estate project located in Sacramento, California.  At the request of Fannie Mae, the debtor's largest creditor, a California state court placed the debtor into a receivership in September 2025.  The debtor filed this bankruptcy case in April 2026.  The U.S. Trustee has moved to have the case transferred to the U.S. Bankruptcy Court for the Eastern District of California.[2]  The debtor opposes the motion.[3]   Fannie Mae joins in the U.S. Trustee's motion to transfer.[4]

As a general proposition, a debtor's choice of venue is entitled to a measure of deference.[5]  That said, there is a long-recognized exception to that principle applicable to cases in which the debtor is a single-asset real estate entity.  In such cases, the presumption is essentially flipped.  When a single-asset real estate entity whose asset

---

[1] NB Element, DST, will be referred to as the "debtor" or "NB Element."

[2] D.I. 7.

[3] D.I. 26.

[4] D.I. 31.

[5] *In re Caesars Entertainment Operating Company, Inc.*, No. 15-10047 (KG), 2015 WL 495259 (Bankr. D. Del. Feb. 2, 2015).

is located in another jurisdiction files for bankruptcy in this Court, if a party-in-interest seeks to transfer venue to the jurisdiction where the asset is located, this Court will typically grant such a motion in the absence of a persuasive explanation that counsels against transferring the case.[6]

Applying the principle described above, the Court does not believe that the debtor has provided a sufficient basis for this Court to retain venue here. The Court will accordingly grant the U.S. Trustee's motion and enter an order transferring venue over this case to the U.S. Bankruptcy Court for the Eastern District of California.

### Factual and Procedural Background

The parties entered into a stipulation that sets forth the relevant facts.[7] NB Element's single asset is real property located in Sacramento, California, improved with a student housing complex referred to as "the Element."[8] NB Element borrowed more than $53 million, secured by the real property.[9] Fannie Mae now holds the rights to enforce the applicable note and mortgage.[10] This loan agreement is governed by California law, with both parties obligated to litigate any dispute arising under or

---

[6] That has been the rule for many years, and the Court believes that this principle is generally understood by practitioners who regularly appear in this Court. The Court was surprised, however, to find that no written opinion of this Court appears to say as much in so many words. This Memorandum Opinion is intended to fill that hole.

[7] *See* D.I. 40. The Court very much appreciates the parties' professionalism in reaching this stipulation.

[8] D.I. 40 at 1 (incorporating D.I. 7 at 2).

[9] *Id.* (incorporating D.I. 7 at 2-3).

[10] *Id.*

in relation to the loan agreement exclusively in California.[11]   All of NB Element's books and records are located in California, as are 41 of the 70 creditors listed on the matrix the debtor filed.[12]

In August 2025, Fannie Mae filed a complaint in California state court, alleging that NB Element had failed to make monthly debt service payments, among other alleged violations of the loan agreements.[13]   In an order that followed in October of 2025, the California state court appointed a receiver.[14]   That receiver is based in an office in California, and the day-to-day operations and managerial decisions relating to the property are thus likewise made in California.[15]

NB Element then filed this bankruptcy case.  Soon thereafter, the U.S. Trustee filed this motion to transfer venue.[16]   While the motion to transfer venue was being briefed by the parties, Fannie Mae and NB Element filed competing emergency motions relating to the receiver's turnover obligations.  Fannie Mae sought to excuse the receiver from being required to turnover property of the estate to the debtor-in-possession, while NB Element sought to compel the receiver to comply with its

---

[11] D.I. 40 at 2.

[12] *Id.*

[13] *Id.* (incorporating D.I. 7 at 3).  *See also Federal National Mortgage Association v. NB Element, et al.*, No. 25CV020042 (Cal. Super. Ct., Sacramento County).

[14] D.I. 40 at 1 (incorporating D.I. 7 at 4).

[15] *Id.*

[16] D.I. 7.

turnover obligations, which would effectively nullify the California state court order providing for the receiver's appointment.[17]

The Court shortened notice to hear the emergency motions promptly.  Because the U.S. Trustee's motion to transfer venue was then pending, in addressing the emergency motions the Court concluded that it was most appropriate to maintain the status quo so that the questions presented by the turnover motions could be resolved by whichever court would ultimately preside over the case.  The Court accordingly entered an interim order that left the receiver in place, without prejudice to the rights of either party to renew its motion after the question of venue was decided.[18]

## Jurisdiction

The Court has jurisdiction over this matter as one "arising in" a case under title 11.  As the Third Circuit made clear in *Stoe*, a matter falls within the "arising in" jurisdiction if it is a matter that, "by [its] nature, not [its] particular factual circumstance, could only arise in the context of a bankruptcy case."[19]  A motion seeking to transfer venue of a bankruptcy case arises under title 28 (the Judicial Code) not title 11 (the Bankruptcy Code).  Such a motion is therefore outside the scope of § 1334(b)'s "arising under" jurisdiction.  But as the kind of matter that could only arise in a bankruptcy case, such a motion is a paradigmatic example of a case that fits within the "arising in" jurisdiction.  It has been referred to this Court under

---

[17] D.I. 11, 13.

[18] D.I. 29.

[19] *Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006).

4

28 U.S.C. § 157(a) and the district court's February 29, 2012 standing order of reference.

## Analysis

**I.** **Absent persuasive reasons to the contrary, a single-asset real estate case will typically be transferred, upon a motion filed by a party in interest, to the jurisdiction where the asset is located.**

Under 28 U.S.C. § 1408, venue is proper where the debtor's "domicile, residence, principal place of business … or principal assets" have been located for 180 days prior to the petition date.[20]  Nonetheless, even when venue is proper, the court may transfer venue to another district if the transfer is "in the interest of justice or for the convenience of the parties."[21]  The moving party bears the burden of demonstrating that transferring venue is appropriate, but "the ultimate decision to transfer venue lies within the sound discretion of the Court."[22]

In considering whether it is appropriate to transfer venue, courts in this circuit are directed to consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."[23]  Numerous factors that may be relevant have been identified, including: (1) the plaintiff's choice of forum, (2) the defendant's forum preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the

---

[20] 28 U.S.C. § 1408(1).

[21] *Id.* § 1412.

[22] *In re Centennial Coal, Inc.*, 282 B.R. 140, 144 (Bankr. D. Del. 2002) (citing *Larami Ltd. v. Yes! Ent. Corp.,* 244 B.R. 56, 61 (D.N.J. 2000)).

[23] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citation omitted).

convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (6) the location of books and records and/or the possibility of viewing premises if applicable, (7) the enforceability of the judgment, (8) practical considerations that could make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from court congestion, (10) the local interest in deciding local controversies at home (11) the public policies of the fora, and (12) the familiarity of the judge with the applicable state law.[24]

The articulation of twelve factors that should be considered, none of which is dispositive, does relatively little to provide guidance to litigants about how any given case is likely to be decided.  The caselaw does indicate, however, that in single-asset real estate cases, "special consideration" is given to administering the case in the district where the real property is located.[25]  This is because "[i]mproved real estate is a peculiarly local concern often better administered by a court in the district in which it is located."[26]  To that end, Judge Brozman of the Southern District of New York Bankruptcy Court observed in *Pavilion Place Associates* that "[i]n virtually every single asset improved real estate partnership case which we have seen, the court has transferred the bankruptcy to the jurisdiction where the assets are located."[27]

---

[24] *Id.* at 879-880 (citations omitted).

[25] *In re Baltimore Food Systems, Inc.*, 71 B.R. 795, 803 (Bankr. D.S.C. 1986).

[26] *In re Pavilion Place Assocs.*, 88 B.R. 32, 36 (Bankr. S.D.N.Y. 1988) (citations omitted).

[27] *Id.*

In *Old Delmar,* for example, the debtors' "only asset" was an apartment complex located in Texas.[28]  The court found that the fact that "all of the debtors' assets [were] located in Texas" "overwhelmingly militate[d] in favor of transfer" to a Texas court.[29]  Likewise, in *Hadar*, that "substantially all" of the debtor's assets were in Ohio again "overwhelmingly militate[d] in favor of transfer."[30]

Judge Gross of this Court made the same point in *Rehoboth Hospitality*:

> This Court agrees with other courts in this Circuit which have held that the estate of a real estate partnership is most efficiently administered in the district where the principal asset is located.  In the context of what is essentially a single asset case, the location of the lone improved real estate asset is of particular concern to the Court, especially in the event of a potential liquidation, and the case is better administered by a court in the district in which it is located.[31]

Similarly, in *Virginia Park*, the debtors' "main assets" were pieces of real property located in Detroit, which the court found "cut[] in favor of transfer."[32]  In *Dunmore*, the debtor's significant assets consisted of "real property in residential developments in the state of California."[33]  Again, the court recognized that "where a debtor's assets consist solely of real property cases have held that transfer of venue is proper because matters concerning real property have always been of local concern

---

[28] *In re Old Delmar Corp.*, 45 B.R. 883, 884 (Bankr. S.D.N.Y. 1985).

[29] *Id.*

[30] *In re Hadar Leasing Intern. Co.*, 14 B.R. 819, 821 (Bankr. S.D.N.Y. 1981).

[31] *In re Rehoboth Hospitality, LP*, No. 11-12798 (KG), 2011 WL 5024267, at *5 (Bankr. D. Del. Oct. 19, 2011) (citations and internal quotations omitted).

[32] *In re Virginia Park 1, LLC*, 672 B.R. 569, 584 (Bankr. S.D.N.Y. 2025).

[33] *In re Dunmore Homes, Inc.*, 380 B.R. 663, 673 (Bankr. S.D.N.Y. 2008).

and traditionally are decided at the situs of the property."[34]  Finally, in *Pinehaven,*

the debtor's only business was the ownership and operation of a motel in

Mississippi.[35]  The court noted the "ample support for the proposition that a real

estate case like Pinehaven[] can be most efficiently and economically administered in

the bankruptcy court closest to its major asset."[36]  And since the debtor "presented no

compelling reason to keep this real estate investment partnership case in this district,

far from the site of its single asset and its creditors," the court transferred the case to

Mississippi.[37]

To be sure, as the court in *Pinehaven* noted, special circumstances can provide

a compelling reason sufficient to overcome this presumption.  In *Holiday Towers,* for

example, the debtor's "principal assets" were condominium units located in South

Carolina.[38]  Despite this, the court found that the debtor's ownership of the

condominium was "basically custodial in nature" and that the debtor had already

transferred management and all books and records to Ohio.[39]  Moreover, the court

found the Ohio creditors were "substantially larger" than the creditors from both

North and South Carolina.[40]  These factors provided the special circumstances

---

[34] *Id.* (citing *In re Enron*, 284 B.R. 376, 392 (Bankr. S.D.N.Y. 2002)).

[35] *In re Pinehaven Assocs.*, 132 B.R. 982, 983 (Bankr. E.D.N.Y. 1991).

[36] *Id.* at 989.

[37] *Id.*

[38] *In re Holiday Towers, Inc.*, 18 B.R. 183, 185 (Bankr. S.D. Oh. 1982).

[39] *Id.*

[40] *Id.* at 189.

8

necessary to overcome the presumption of transfer, and the court declined to transfer the case to South Carolina.[41]

Taken together, these cases stand for the proposition that in single-asset real estate cases there is a presumption that on the motion of a party in interest the case will be transferred to the district within which the real property is located. While that presumption can be overcome by a showing that special circumstances militate in favor of retaining venue in the court in which the case was filed, the party objecting to the transfer must show that such special circumstances exist.

## II. The present record reveals no special circumstances that would warrant retaining jurisdiction in this Court.

Counsel for the debtor did not take issue with the proposition that in a single-asset real estate case, courts typically grant motions to transfer venue to the jurisdiction where the asset is located in the absence of special circumstances that support the retention of venue. Debtor's counsel, however, argued that such circumstances were present here. For the reasons set forth below, the Court is unpersuaded by that argument.

In support of the case for special circumstances, the debtor made essentially three points. The *first* was that the debtor's choice of venue is entitled to deference. But that can hardly count as a "special circumstance." The question of whether to change venue to the jurisdiction where the asset is located only arises in a voluntary case, after all, when the debtor chooses to file in a jurisdiction other than the one

---

[41] *Id.*

9

where the asset is located.  If deference to the debtor's choice of venue were to count as a "special circumstance," the exception would essentially swallow the rule.  That accordingly cannot count as a special circumstance for this purpose.

The *second* reason was that the debtor's counsel was based in the jurisdiction where the case was filed.  While the Court will not go so far as to say this factor is irrelevant, the Court does not believe it can be enough by itself to count as a special circumstance.  After all, the debtor always has complete control over the counsel it chooses to hire.  So if this alone were enough to be a basis for a court to retain venue, there would be little left of the presumption in favor of transfer.

*Finally*, the debtor argued that it was organized under Delaware law, and that the case was likely to raise issues of Delaware law with which a court sitting in Delaware was more likely to be familiar.  The Court agrees with the proposition that in a case that would likely involve the intensive consideration of the law of a particular state, a filing located in a bankruptcy court within that state may constitute a special circumstance that counsels against transferring venue.

The difficulty with that argument as applied here is that the debtor could not identify any issue of Delaware law that was reasonably likely to be presented in this case.  A dispute over the debtor's authority to file the case may well arise in this case.  And there are circumstances in which, under the internal affairs doctrine, such disputes will turn on the state law of the jurisdiction in which the debtor is organized.  This, however, does not appear to be such a case.  While the debtor was organized under Delaware law, the order appointing a receiver was issued by a state court in

10

California.  Whether that order stripped the debtor's management of the authority to file for bankruptcy – a question that no party has yet raised here – would turn not on Delaware law but on the terms of the California state court order.  Nor did the debtor identify any other issue of Delaware law that seemed reasonably likely to be presented in this case.  Indeed, the parties appear to agree that the principal questions that the court presiding over this case will be required to address will be issues of federal bankruptcy law.  The mere speculation that the case *may* raise questions of Delaware law is an insufficient basis to overcome the presumption in favor of transfer.

Accordingly, the Court sees no special circumstance weighing in favor of keeping venue.  The Court will therefore follow the usual practice in single-asset real estate cases of transferring venue to the court for the jurisdiction in which the asset is located.

## Conclusion

For the foregoing reasons, the Court will grant the motion to transfer venue. The Court will enter a separate order so providing.

Dated: May 13, 2026

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE